IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00705-PSF-MJW

D.V.C. TRUCKING, INC.,

    Plaintiff,

v.

RMX GLOBAL LOGISTICS,

    Defendant.
_____

**ORDER ON PENDING MOTIONS**
_____

This matter comes before the Court on defendant's Motion To Refer to Arbitration, which was improperly contained within defendant's answer filed May 13, 2005 (Dkt. # 5), and defendant's subsequently filed Motion to Stay Action and Refer to Arbitration filed July 19, 2005 (Dkt. #14). On July 10, 2005, Plaintiff filed a response to Defendant's original motion (Dkt. # 10) to which plaintiff filed a reply on July 21, 2005 (Dkt. # 18). On August 3, 2005, plaintiff filed a further response to what it describes as the "Refiled Motion to Stay Action and to Refer to Arbitration." (Dkt. # 20). On August 18, 2005 defendant filed yet another reply to plaintiff's response briefs (Dkt. # 22). The matter is ripe for determination.

Defendant RMX Global Logistics ("RMX") (which is apparently a d/b/a/ for Rocky Mountain Express Corp.) asserts that this matter should be stayed, and that the parties

should be "referred" for arbitration, pursuant to certain provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Colorado Arbitration Act, C.R.S. §§ 13-22-203 and 206.  The Court takes this motion by defendant as a motion to compel arbitration of the matters raised in plaintiff's complaint, filed in this Court on April 18, 2005.  Plaintiff, D.V.C. Trucking, Inc. ("DVC"), asserts that arbitration should not be compelled, and that based on several grounds this case should proceed in federal court.  For the reasons set forth below the Court finds that this case should be submitted to arbitration, and orders the parties to proceed with arbitration of the claims asserted in plaintiff's complaint.

Plaintiff, self-described in its Complaint as a "small business motor carrier" (Complaint at ¶ 1) alleges that it entered into a business arrangement with defendant, which plaintiff describes as a "broker of motor carrier transportation services registered with the U.S. Department of Transportation, Federal Motor carrier Safety Administration."  (*Id.*).  Plaintiff alleges that between mid-September 2004 and November 2004, it performed the transportation of approximately 43 different loads brokered by RMX (*id.* at ¶ 8).  Plaintiff alleges that by letter dated January 21, 2005, it requested RMX to provide it with copies of records of each transaction, but that RMX failed to provide the records despite the provisions of 49 C.F.R. § 371.3(c), which provide that "[e]ach party to a brokered transaction has the right to review the record of the transaction required to be kept by these rules."  Plaintiff requests an order requiring RMX to comply with 49 C.F.R. § 371.3 by providing the requested records, or "[i]n the alternative" to enter an order enjoining RMX from operating as a broker for its failure to

comply with the registration requirements of 49 U.S.C. § 13904(a).  Plaintiff also seeks costs and attorneys fees for the bringing of this action.

RMX moves to stay this action and compel arbitration based on a Contract Carrier Transportation Agreement ("Agreement") attached to its answer as Exhibit A, and also to its various motions.  That Agreement provides, in a paragraph headed "<u>Arbitration</u>"  that:

> Any dispute arising about any matter covered by the terms of this Agreement shall first be resolved by the parties, if possible.  If the parties cannot resolve the dispute, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration before a single arbitrator in Denver, Colorado, administered by the American Arbitration Association under its commercial arbitration rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

Agreement at ¶ 7.  Plaintiff argues that despite the above-quoted provision of the Agreement arbitration may not be compelled here for several reasons.

First, plaintiff contends that a provision contained in Section 1 of the FAA exempts this dispute from the Court's power to order arbitration.  The Federal Arbitration Act generally provides this Court with authority, in any suit or proceeding before it, to refer to arbitration any issue "referable to arbitration under an agreement in writing."  9 U.S.C. § 3.  Title 9 U.S.C. § 1, however, provides an exemption from the power of referral for  "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  Plaintiff claims this exemption has been held to include "transportation workers," and that its contract with

defendant is a "contract of employment" within the meaning of the exemption. This Court does not agree that 9 U.S.C. § 1 exempts the instant case from referral for arbitration.

In *Circuit City Stores, Inc., v. Adams*, 532 U.S. 105 (2001) the Supreme Court rejected a claim by a retail store employee arguing that the language of 9 U.S.C. § 1 exempted from arbitration his claim of employment discrimination against a retail store employer. In so holding, the Supreme Court stated that the exemption provided in Section 1 of the FAA does not apply to "all classes of workers engaged in interstate commerce," but under the statutory construction principle of *ejusdem generis,* only to those like seamen, railroad employees and the like who are engaged in transportation industries. 532 U.S. at 114-15. Workers "engaged in commerce" were deemed in *Circuit City* to be a much smaller group than those who are in industries "affecting" commerce. The Court further stated that "it is a permissible inference that the employment contracts of the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them." *Id.* at 120-21.

The Supreme Court's reference to the limited exemption applying to "classes of workers engaged in . . . commerce" was reiterated in the decision in *Owner-Operator Independent Drivers Ass'n. v. C.R. England, Inc.*, 325 F. Supp. 2d 1252 (D. Utah 2004), a case on which plaintiff relies. The court there described the arbitration exemption as applying to plaintiffs, who were independent contractor truckers, stating that "[p]laintiffs, as persons who, pursuant to the Operating Agreements at issue, actually move items in

4

interstate commerce, are in a class of workers engaged in interstate commerce, or are transportation workers, within the meaning of the exemption." *Id.* at 1257. In reaching the conclusion that these independent owner-operator truckers could not be compelled to arbitrate their Truth-in-Lending claims against their lessor, that court focused on the operating agreements between the parties "to determine whether or not they are 'contracts of employment' of a class of workers engaged in interstate commerce within the meaning of the FAA." *Id.* at 1258. In applying the Supreme Court's analysis in *Circuit City* to the facts before it, the District of Utah judge recognized that the exemption applied "to contracts of employment for transportation workers." *Id.* at 1257.

In *C.R. England, supra,* the plaintiffs were an organization of independent owner-operated truck drivers. By contrast, the plaintiff here, by its own pleading, describes itself as a corporation. The Court finds that plaintiff here is not an employed "transportation worker" engaged in interstate commerce, but rather is a business corporation. Despite plaintiff's assertion that DVC is owned by Donald and Vanessa Hairston, that it is Mr. Donald Hairston who drives one of the trucks, and Mrs. Hairston who "runs the business," apparently suggesting that they are the real plaintiffs or that DVC derives standing through them to claim the FAA exemption (*see* Plaintiff's Response, Dkt # 10, at 1, 3-4) the facts of the underlying contract suggest otherwise. The party to the Transportation Agreement is D.V.C. Trucking, Inc., not an individual transportation worker. The entity that requested the documentation from defendant is DVC, the same corporation, and not an individual transportation worker. (*See* Exhibit A to Complaint). Moreover, the agreement at issue here, dated September 15, 2004, is

certainly not a contract of employment of a "class of worker" engaged in interstate commerce, but rather is an arm's length business contract for carrier services. As such, this Court finds no basis to apply the exemption from compelled arbitration contained in 9 U.S.C. § 1.

Plaintiff next contends that arbitration should not be ordered here because this case is brought pursuant to 49 U.S.C. § 14707, a statute which provides a right of intervention to the Secretary of Transportation and other "procedures" that would be precluded if the matter were referred to arbitration. *See* 49 U.S.C. § 14707(b) The Court notes that plaintiff asserts in its Complaint that the case is brought under 49 U.S.C. § 14707 (Complaint at ¶¶ 2, 6), but finds the application of that statute to this case to be a dubious proposition.

Title 49 U.S.C. § 14707(a) provides:

> If a person provides transportation by motor vehicle or service in clear violation of section 13901-13904 or 13906, a person injured by the transportation or service may bring a civil action to enforce any such section. In a civil action under this subsection, trial is in the judicial district in which the person who violated that section operates.

Sections 13901-13904 of Title 49 are sections requiring registration with the Secretary of Transportation for motor carriers, freight forwarders and brokers, and section 13906 requires these types of entities to provide security. It is true that 49 U.S.C. § 13904(a) requires defendant to be registered as a transportation broker, but there is no dispute here that defendant is so registered. The complaint itself alleges that RMX is registered. (Complaint at ¶¶ 1, 5). Thus, this case does not involve, as

required under 49 U.S.C. § 14707, an alleged "clear violation" of the registration requirement of section 13904 of Title 49.

While it is true that plaintiff does ask the Court to enter, as alternative relief, an order enjoining RMX from operating as a broker because of its "failure to comply with the registration requirements" of 49 U.S.C. § 13904(a), it cites no authority for the proposition that not supplying the records referenced at 49 C.F.R. § 371.3 constitutes a "registration violation."  The regulation contains no provision that states it is a registration violation not to produce the records enumerated in the regulation, and moreover the regulation contains no mention of any mechanism for enforcing its provisions.  In fact, 49 U.S.C. § 14122, the statute that authorizes the Secretary of Transportation to promulgate regulations regarding the maintenance of these records, contains no provision for a private right of action to enforce the record-keeping obligation. Furthermore, despite plaintiff's statement that it has asked the Court to "both order RMX to comply with the regulations and to suspend RMX's federal registration until it does." (Plaintiff's Response to Refiled Motion, Dkt. # 20, at 5), the plain reading of plaintiff's Complaint is that the request to suspend RMX's registration is an "alternative" request for relief.  See Complaint at p. 4.

In addition, 49 U.S.C. § 14707 provides a private right of action only to a person "injured" by the transportation or service provided in violation of the registration requirements.  Plaintiff here does not allege any injury to it due to a registration violation by RMX, and in fact alleges no "injury" whatsoever in the complaint.  Plaintiff simply requests an order directing compliance with 49 C.F.R. § 371.3, or alternatively

7

suspension of RMX's registration.

For these reasons, the Court finds that 49 U.S.C. § 14707 has no application to this case. Thus, even if the procedural provisions of 49 U.S.C. § 14707(b) are not available in an arbitration, that argument provides no basis for retaining this case in federal court.

Finally, plaintiff argues that its request for documentation under 49 C.F.R. § 371.3 is not subject to arbitration under paragraph 7 of the Transportation Agreement because it is not a matter "arising out of or relating to" the Transportation Agreement. (*See* Plaintiff's Response to Defendant's Motion (Dkt. #10) at 5-7). The Court does not agree.

The Transportation Agreement expressly provides that it is subject to federal law and will be interpreted in accord with the laws of the United States. (*See* Agreement at ¶ 10). If, as plaintiff argues, federal law requires RMX to maintain documentation and make it available to plaintiff, and the above-quoted regulation apparently does so require, such a dispute is a matter arising out of or relating to this Agreement. Absent the Agreement, RMX would not arguably have had an obligation to keep such documentation for the benefit of DVC. Accordingly, the Court finds that arbitration of this matter is within the contemplation of paragraph 7 of the Transportation Agreement.

**Conclusion**

For the reasons set forth above, defendant's Motion to Stay Action and Refer to Arbitration (Dkt. # 14) is GRANTED in part. The parties are directed to take such steps as are necessary to commence arbitration over the issues raised in plaintiff's complaint.

This case will not be stayed, but rather is DISMISSED. The defendant's request for costs and attorneys' fees is DENIED.

Any other motions that may be contained within the various other filings by defendant, including its Motion for Summary judgment filed on August 5, 2005 (Dkt. # 21), are DENIED as moot.

Dated:  August 24, 2005

BY THE COURT:

s/ Phillip S. Figa

_____
Phillip S. Figa
United States District Judge

.